IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADIDAS AMERICA, INC. and ADIDAS
SALOMON AG,

                    Plaintiffs,

     v.

KMART CORPORATION; FOOTSTAR, INC.;
MERCURY INTERNATIONAL TRADING
CORP.; ELAN IMPORTS CO., INC.; NEXTTEC
INTERNATIONAL, INC.; and INNOVATIVE
CUSTOM BRANDS INTERNATIONAL, INC.,

                    Defendants.

CV-05-120-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

This is an action for trademark infringement and related state-law claims brought by

adidas America, Inc. and adidas Salomon AG (collectively, "adidas"), alleging that various

defendants, including defendant Mercury International Trading Corporation ("Mercury"), have

infringed on adidas's Three-Stripe Mark by marketing, selling, and offering for sale imitations of

its "Superstar" and "Superstar 2G" shoes and by marketing, selling, and offering for sale other goods which bear a confusingly similar imitation of adidas's Three-Stripe Mark.

adidas originally filed this case on January 26, 2005, but at that time did not name Mercury as a defendant.  Over a year later on February 10, 2006, adidas added Mercury as a defendant in its Third Amended Complaint (docket #94).  Mercury asserts that it has no contacts with Oregon sufficient to subject it to personal jurisdiction in this forum.  Accordingly, Mercury has now filed a Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and Lack of Proper Venue (docket #159).  For the reasons that follow, the motion should be GRANTED on the basis of a lack of personal jurisdiction, and DENIED AS MOOT with respect to venue.

## DISCUSSION

### I.  Personal Jurisdiction

#### A.  Legal Standard

Under FRCP 12(b)(2), a defendant may move for dismissal on the grounds that the court lacks personal jurisdiction.  When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F3d 797, 800 (9th Cir 2004).  When a court does not conduct an evidentiary hearing, but makes its jurisdictional decision based on pleadings and affidavits, the plaintiff is required merely to make a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss.  *Id*, citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F3d 126, 128 (9th Cir 1995).  That is, plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant.  *Ballard v. Savage*, 65 F3d 1495, 1498 (9th Cir 1995).

Personal jurisdiction is proper only if the forum state's long-arm statute confers personal jurisdiction over the nonresident defendant and the exercise of jurisdiction comports with federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F3d 888, 893 (9th Cir 1996). Oregon's long-arm statute, Oregon Rule of Civil Procedure ("ORCP") 4, extends personal jurisdiction to the extent permitted by federal due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F2d 758, 760 (9th Cir 1990).

**B. <u>Jurisdictional Facts</u>**

**1. <u>General Nature of Business</u>**

Mercury is a Massachusetts corporation with its sole place of business in Attleboro, Massachusetts. It operates primarily as an independent buying agent for clients who wish to sell large volumes of shoes at retail locations. Mercury employs 21 people, all but two of whom are located in Massachusetts. Mercury's only employees outside of Massachusetts are two salesmen, one located in Connecticut and the other in Missouri.

Mercury is not registered to conduct business in Oregon, has never had offices or employees in Oregon, has no bank accounts or property in Oregon, and has never paid taxes in Oregon. Mercury does not employ any sales agents in Oregon and none of its employees have traveled to Oregon on business. Mercury does not advertise in Oregon. Mercury does not operate a web site advertising its products or services, nor does it sell its products through a catalogue.

Mercury acts as an agent between clients in the United States and shoe vendors located overseas. Mercury assists its clients in designing shoes to meet the clients' specifications. When a client wishes to purchase the shoes, it places an order with Mercury. Mercury transmits the

order to an overseas trading company, which transmits it to a foreign manufacturer that produces the shoes.  The shoes are sold directly from the manufacturer to the trading company, and then directly from the trading company to Mercury's American client, with the Free-On-Board ("F.O.B.") point where the shoes are placed on boats (typically in Hong Kong, China, or elsewhere) for shipment to the United States.  The trading company invoices Mercury's American client for the cost of the shoes when the shoes are delivered to the American client's shipping agent.  Mercury invoices the American client for its agency fee at the same time, and has no input or control over what happens to the shoes.  At no time does Mercury have title to or control over the manufactured shoes.  Mercury's American client arranges and pays for all transportation from the country of origin to the shipping destination in the United States.

Over the past 19 years, Mercury has not acted as a buying agent for any customers in Oregon and is aware of no Oregon customers prior to this period.  As part of its buying agent business, Mercury never takes legal title of any of the shoes purchased by its clients and is never responsible for the shipping of the products.  As a result, Mercury has not shipped any products related to this business anywhere in the United States nor has it shipped any products into Oregon from the overseas vendor.

Mercury also sells a small number of shoes on a wholesale basis.  This activity represents only a small portion of Mercury's operations.  During the past 19 years, Mercury has done between 90-95% of its business as a buying agent for its clients, with the remainder representing shoes sold directly by Mercury.  Mercury has never sold or offered to sell shoes in Oregon, sold shoes to an Oregon customer.  Mercury has no business outside of its primary buying agent business and its secondary shoe sales business.

4 - FINDINGS AND RECOMMENDATION

## 2. <u>Nature of Business Related to adidas's Claims</u>

None of the accused infringing shoes in this case were shoes owned or sold by Mercury. Mercury's sole connection to this case is as the buying agent for Meldisco, a division of defendant Footstar, Inc. ("Footstar"), for certain of the allegedly infringing shoes.

Defendant KMart Corporation ("KMart") has more than 1,400 stores located in all 50 states. Footstar is entirely responsible for the footwear departments in each of those stores, maintaining an inventory and physically managing the shelf space and employees. All of Footstar's athletic shoes are sold at KMart stores.

Mercury assisted Meldisco in designing the shoes to Meldisco's specifications. Once Meldisco had approved the design and placed an order, Mercury forwarded the order to the vendor MFG Trading Ltd. ("MFG") in Hong Kong, which then transmitted the orders to a number of shoe manufacturers in China. The manufacturers made the shoes and transferred them to MFG. MFG then transferred the shoes to Meldisco's shipping agent in China, Maersk Logistics, at a port in China. The shoes were F.O.B. when they were delivered to Maersk Logistics, and MFG invoiced Meldisco for the cost of the shoes at this point. Title on the shoes passed from MFG to Meldisco when Maersk Logistics accepted the shoes. Maersk Logistics then placed the shoes on ships for transfer to the United States. Mercury also invoiced Meldisco for its fees at the same time. The shoes were then shipped to either California or South Carolina as determined by Meldisco.

At no point in this process did Mercury have title to or control over the shoes. The actual transfer of title was between MFG and Meldisco/Footstar. Mercury merely acted as a buying agent and was paid for its services as an agent. Mercury's obligations terminated once the shoes

were F.O.B. at the port in China, and Mercury invoiced for its fees once the transfer between

MFG and Meldisco/Footstar occurred.

Mercury's obligations concluded once the shoes boarded the ships in China.  From that

point onward, Meldisco owned the shoes and could dispose of them as it wished.  Mercury has

no specific knowledge of what Meldisco did with the shoes, or how Meldisco may or may not

have distributed them throughout the United States.  Mercury was informed by Meldisco that the

shipments of the allegedly infringing shoes were sent either to Mira Loma, California or

Gaffney, South Carolina.

All contacts between Mercury and Meldisco throughout this process were between

persons located at Footstar's principle place of business in Mahwah, New Jersey, and Mercury

employees in Massachusetts or between Meldisco and Mercury employees at trade shows in Las

Vegas, Nevada.

### C.  Analysis

Mercury moves for dismissal based on the lack of personal jurisdiction on the ground that

it has had no continuous and systematic contacts with Oregon and has not purposefully availed

itself of the opportunity to conduct business in Oregon.

Generally, determining whether personal jurisdiction exists over an out-of-state

defendant involves two inquiries: whether the forum state's long-arm statute permits the

assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due

process.  *Fireman's Fund*, 103 F3d at 893.  Because ORCP 4L confers personal jurisdiction

coextensive with federal due process, however, "the analysis collapses into a single framework

and the court proceeds under federal due process standards."  *Perry v. Righton.com*, 90 F Supp

2d 1138, 1140 (D Or 2000), quoting *Millennium Enter., Inc. v. Millennium Music, LP*, 33 F

Supp 2d 907, 909 (D Or 1999).  Thus, this court need only address whether personal jurisdiction

over Mercury comports with federal due process standards.

Due process requires that a defendant have certain minimum contacts with the forum

state such that the maintenance of the suit does not offend "traditional notions of fair play and

substantial justice."  *World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 292 (1980); *Int'l*

*Shoe Co. v. State of Washington*, 326 US 310, 316 (1945).  The nature and quality of the contacts

with the forum state necessary to support personal jurisdiction depends upon whether the

plaintiff asserts general or specific personal jurisdiction over the defendant.  *Tuazon v. R.J.*

*Reynolds Tobacco Co.*, 433 F3d 1163, 1169 (9th Cir 2006).

### 1. General Jurisdiction

General jurisdiction refers to the authority of a court to hear any cause of action

involving a defendant, regardless of whether the cause of action is grounded in the defendant's

activities within the forum state.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 US

408, 415 (1984).  In order for a court to assert general jurisdiction over a nonresident defendant,

the plaintiff must demonstrate that the defendant has "continuous and systematic" contacts with

the forum state.  *Id* at 416.  Although the Ninth Circuit has not "developed a precise checklist or

articulated a definitive litany of factors," it considers the "[l]ongevity, continuity, volume,

economic impact, physical presence, and integration into the state's regulatory or economic

markets" of corporate defendants when deciding whether its contacts are sufficient to warrant the

exercise of general jurisdiction.  *Tuazon*, 433 F3d at 1172.

Mercury has no physical presence in Oregon, is not registered to conduct business in Oregon, and has no registered agents, employees, or sales representatives in Oregon.  No employee or officer of Mercury has ever traveled to Oregon.  Thus, adidas cannot show the "continuous and systematic" contacts necessary for general personal jurisdiction.

### 2. Specific Jurisdiction

Specific jurisdiction requires a relationship between the defendant's forum contacts and the plaintiff's claim.  *Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme,* 433 F3d 1199, 1205 (9th Cir), *cert denied*, 126 SCt 2332 (2006).  In order to establish specific jurisdiction, a plaintiff must satisfy a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Id* at 1205-06, citing *Schwarzenegger*, 374 F3d at 802.

The Ninth Circuit uses a "more flexible approach" when considering whether a defendant's contacts are sufficient in nature to warrant the exercise of specific personal jurisdiction under this three-pronged test:

> Although Ninth Circuit law formerly required a plaintiff to demonstrate each of these three factors to establish specific jurisdiction, this court has, in light of subsequent Supreme Court precedent, adopted a more flexible approach.  Jurisdiction may be established with a lesser showing of minimum contacts if considerations of reasonableness dictate.  Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts

8 - FINDINGS AND RECOMMENDATION

to allow the state to exercise personal jurisdiction if such exercise
is sufficiently reasonable.

*Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F3d 1182, 1188 n2 (9th Cir 2002) (internal

quotations and citations omitted).

### a.  Purposeful Availment

The purposeful availment requirement is the "touchstone" of the personal jurisdiction

inquiry.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F3d 1114, 1123

(9th Cir 2002).  Although contacts that are "isolated" or "sporadic" may support specific

jurisdiction if they create a "substantial connection" with the forum, the contacts must be more

than random, fortuitous, or attenuated.  *Burger King v. Rudzewicz*, 471 US 462, 475 (1985).

Moreover, the purposeful availment inquiry differs somewhat depending on the type of claim

asserted by the plaintiff:

> We have typically treated "purposeful availment" somewhat
> differently in tort and contract cases.  In tort cases, we typically
> inquire whether a defendant purposefully directs his activities at
> the forum state, applying an "effects" test that focuses on the
> forum in which the defendant's actions were felt, whether or not
> the actions themselves occurred within the forum.  By contrast, in
> contract cases, we typically inquire whether a defendant
> purposefully avails itself of the privilege of conducting activities
> or consummates a transaction in the forum, focusing on activities
> such as delivering goods or executing a contract.

*Yahoo!*, 433 F3d at 1206 (internal quote marks and citations omitted).

adidas argues that Mercury is subject to jurisdiction in Oregon because it facilitated the

manufacture of shoes for Meldisco/Footstar.  Several models were designated as "all store"

shoes, meaning that the shoes were manufactured in sufficient quantities to be sold at all KMart

stores.  As a result, adidas contends that Mercury must have known that the infringing footwear

would be sold in KMart stores in Oregon.  Mercury responds that it is not be subject to personal

jurisdiction in Oregon simply for acting as a buyer's agent for Footstar's shoes which eventually

made their way into KMart stores in Oregon.

To establish specific jurisdiction in Oregon, adidas invokes the "effects" test described in

*Calder v. Jones*, 465 US 783 (1984), and argues that the effects of Mercury's activities have

damaged adidas in its principal place of business in Oregon.  The Ninth Circuit construes *Calder*

to impose three requirements, namely "the defendant allegedly must have (1) committed an

intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows

is likely to be suffered in the forum state."  *Yahoo!,* 433 F3d at 1206 (internal punctuation and

citation omitted).

However, adidas has presented no evidence that Mercury intentionally directed its

activities at Oregon knowing that Oregon consumers would be harmed.  Instead, the evidence

reveals only that Mercury was told that the shoes would be shipped to California and South

Carolina and had no knowledge of or control over how Meldisco/Footstar would later distribute

the shoes.  Mercury did not know whether the shoes would be distributed to all KMart stores or

to any particular KMart store.  While Mercury may have generally known that its buying agent

activities would have some effects in the United States generally, none of its actions were

expressly aimed at Oregon.

Although adidas asserts that the shoes whose manufacture Mercury facilitated eventually

were sold in KMart stores in Oregon, the mere placement of goods into the stream of commerce

is an insufficient basis on which to find purposeful injection into a particular state:  "a

defendant's awareness that the stream of commerce may or will sweep the product into the

forum State does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 US 102, 112 (1987). In a May 10, 2006 letter to the court, adidas cites *Luv 'N Care, Ltd. v. Insta-Mix, Inc.*, 438 F3d 465 (5th Cir 2006), in support of its position on personal jurisdiction. In *Luv 'N Care*, the Fifth Circuit "declined to follow the suggestion of the plurality in *Asahi* that some additional action on the part of the defendant, beyond foreseeability, is necessary to convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id* at 470 (internal citations and quote marks omitted). In contrast, the Ninth Circuit has expressly cited the language of the *Asahi* plurality, characterizing it as "established law on personal jurisdiction." *See Terracom v. Valley Nat'l Bank*, 49 F3d, 555, 560 (9th Cir 1995). Moreover, the Ninth Circuit has noted that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction. [Instead,] there must be 'something more,'" [namely] 'express aiming' at the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F3d 1082, 1087 (9th Cir 2000) (citations omitted). Taken together, these cases suggest that jurisdiction does not lie against a defendant who is uninvolved in other parties' actions in or affecting the forum state, even where it was arguably foreseeable that residents of the forum state might be affected or that goods placed into the stream of commerce might eventually end up in the forum state. *See*, *e.g.*, *Schwarzenneger*, 374 F3d at 807 (creation and publication of advertisement expressly aimed at Ohioans and not at Californians insufficient for personal jurisdiction in California); *McGlinchy v. Shell Chem. Co.*, 845 F2d 802, 817 (9th Cir 1988) (despite execution of contract in California, no express aiming at California where no contractual

term suggested that any contractual obligations would be carried out in California); *Sunriver Resort Ltd. P'ship v. Sun River St. George Dev. Corp.*, 2005 WL 273021 (D Or Feb 1, 2005) (operation of interactive website and email, telephone and mail communications with individuals in Oregon insufficient); *Julian-Ocampo v. Ambulance Network, Inc.*, 2001 WL 55565 (D Or Jan 23, 2001) (knowledge that air-ambulance flight would land in Oregon insufficient).

Thus, this court is not persuaded that Mercury's actions as Meldisco's buying agent and knowledge that several of the models of shoes whose manufacture it facilitated were designated as "all store" shoes (arguably making it foreseeable to Mercury that some of those shoes would make it into Oregon stores) are sufficient to establish "express aiming" at Oregon or meet the "effects" test as applied in the Ninth Circuit. Accordingly, this court concludes that adidas has failed to establish the first prong of the specific personal jurisdiction test.

### b.  Claims Relating to Mercury's Forum State Activities

The second requirement for finding specific personal jurisdiction is that the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum. *Helicopteros Nacionales de Columbia, S.A.*, 466 US at 414. The Ninth Circuit has adopted the "but for" test to determine if this requirement is met. *Myers v. Bennett Law Offices*, 238 F3d 1068, 1075 (9th Cir 2001), citing *Ballard*, 65 F3d at 1500.

As just discussed, Mercury has engaged in no activities in Oregon. Instead, it entered into a contract with Meldisco, a division of a company (Footstar) which in turn does business with another company (KMart) which operates stores in every one of the 50 states, including Oregon. The subject of the Mercury-Meldisco contract (*i.e.* the allegedly infringing shoes) made their way into the stream of commerce in the United States, and eventually into KMart stores in

Oregon.  However, Mercury's activities related to those shoes took place entirely outside the state of Oregon; Mercury never had title to the shoes either outside or inside the United States; and Mercury never had a say in the distribution and sale of those shoes once they reached port in the United States.  Thus, for jurisdictional purposes, this court concludes that Mercury's activities are insufficient to establish any relationship with Oregon sufficient to satisfy this prong of the specific personal jurisdiction test.

### c.  Reasonableness

Lastly, the exercise of personal jurisdiction must be reasonable.  In determining reasonableness, the court must balance the following factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F3d 857, 866-67 (9th Cir 2003) (citation omitted).

No one factor is dispositive.  *Id*.  If a plaintiff has shown that the defendant purposefully directed its activities at the forum state, jurisdiction is presumptively reasonable, and the burden shifts to the defendant to show a "compelling case" why jurisdiction is unreasonable. *Panavision Intern., L.P. v. Toeppen*, 141 F3d 1316, 1322 (9th Cir 1998) (citations omitted).

Here, adidas has made no *prima facie* showing of purposeful availment by Mercury and is not entitled to the presumption that jurisdiction is reasonable.  To the contrary, a careful

13 - FINDINGS AND RECOMMENDATION

review of the relevant factors demonstrates that jurisdiction over Mercury is constitutionally unreasonable.

adidas has made no showing that Mercury purposefully injected its activities into Oregon. At most, adidas has shown that Mercury facilitated the manufacture of several models of shoes for Meldisco/Footstar which Mercury knew would be "all store" shoes. However, Mercury never took title to those shoes, never arranged for the shipment of those shoes into Oregon, and never sold any of those shoes. All of Mercury's contacts with Meldisco/Footstar were in either Massachusetts or in Nevada; all manufacturing arrangements made by Mercury took place overseas; title passed F.O.B. China from MFG to Meldisco/Footstar and resulted in shipment of Footstar's goods into states other than Oregon; Mercury's involvement ended prior to the shoes arriving at American ports; and Mercury had no control over where the shoes were distributed or sold once Meldisco/Footstar took title to them in China.

Massachusetts, which both has personal jurisdiction over Mercury and is a proper venue for the claims against Mercury, provides a readily available alternative forum. Moreover, given that the claims sound in federal law and the laws of both Oregon and Massachusetts, neither state presents a weightier interest in adjudicating the litigation, a more significant concern that a conflict with its sovereignty will surface, or a significantly greater opportunity for adidas to obtain convenient and effective relief.

Some judicial economy is obviously lost by requiring the filing of a separate action for the claims against Mercury, which obviously bear some relationship to the claims against the remaining defendants. Moreover, it is unavoidable that adidas will face some added burden by being forced to litigate its claims against Mercury in Massachusetts rather than on its home turf

14 - FINDINGS AND RECOMMENDATION

in Oregon.  However, these concerns simply cannot create personal jurisdiction over a defendant where the only basis for personal jurisdiction is the foreseeability that goods which the defendant arranged to have manufactured would eventually make their way into Oregon stores and whose contacts with this forum are effectively nonexistent.

**II.  Venue**

Since this court lacks personal jurisdiction over Mercury, it need not and does not address Mercury's alternative argument that it is entitled to dismissal due to improper venue.

**RECOMMENDATION**

For the reasons stated above, defendant Mercury International Trading Corporation's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and Improper Venue (docket #159) should be GRANTED on the basis of a lack of personal jurisdiction and DENIED AS MOOT with respect to venue.

**SCHEDULING ORDER**

Objections to these Findings and Recommendations, if any, are due **July 27, 2006**.  If no objections are filed, then the Findings and Recommendations will be referred to a district judge and go under advisement on that date.

///

///

///

///

15 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district judge and go under advisement.

DATED this 6th day of July, 2006.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge